**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT JEAN, ET AL.,** | ) | **CASE NO.1:04CV1904** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **THE STANLEY WORKS, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant The Stanley Works' ("Stanley") Motion to Dismiss. For the following reasons, the Court grants in part, and denies in part, Defendant's Motion.

Defendant Stanley's Motion to Dismiss seeks to dismiss claims by ten Plaintiffs whose distributor agreements with Stanley did not contain arbitration clauses. Plaintiffs's claims are for breach of fiduciary duty, conversion, unjust enrichment, breach of contract, fraud, tortious interference, injunctive relief, fraud in the inducement, defamation and false imprisonment.

**FACTS**

1

Plaintiffs' First Amended Complaint ("Complaint") alleges Defendant Stanley Works and its Mac Tools Division wrongfully treated their distributors and/or employees. Plaintiffs drive Mac tool trucks and sell Mac tools to mechanics, service stations, garages and dealerships. According to Plaintiffs' Complaint, Plaintiffs buy the tools from Stanley at prices that approximate retail prices then sell them to end users at twenty-five to thirty-five percent markup. Most are installment sales where end users pay the full purchase price in installments, usually over a ten week period, without interest. Plaintiffs allege Stanley's business model dooms distributors to failure while realizing profits for Stanley. In fact, Plaintiffs allege Stanley earns greater profits when distributors fail than when they succeed. Plaintiffs allege Stanley possessed information demonstrating that the business model used to enlist new distributors was not based on reasonable numbers and all new distributors were bound to fail. Plaintiffs allege Stanley fraudulently fills out distributor business expense sheets and income pages, giving the appearance of commercial viability to distributors. The Distributor Financial Evaluation Form ("DFEF") is the document allegedly used by Stanley to demonstrate the profitability of distributorships to potential distributors. Plaintiffs allege this document contains false and misleading information that fraudulently induces new distributors to sign up with Stanley.

Plaintiffs allege Stanley makes money by selling distributors tools at large markups, knowing distributors will be unable to resell the tools at profitable prices to end users. Mac then buys back the tools at a discounted rate and resells the tools, resulting in large profits for Mac at the expense of the distributor. Eventually, Mac decided to convert to employee-based distributors called Mac Direct Sales Representatives ("MDSR") and sought to eliminate the independent distributors by setting unattainable sales standards. After a few years, Mac

determined independent distributors were more profitable for Mac than employee-based distributors. Plaintiffs allege several problems with the conversion of employee-based distributors to independent distributors.  First, Mac often required independent distributors mortgage their homes to Mac.  Employee distributors were forced to resign from Stanley before being permitted to convert to independent dealers.  They were promised training that was never provided.  Finally, Plaintiffs allege Stanley "dumped" bad debt on the independent distributors, saddling them with costs of truck repairs, inventory adjustments and debts of Stanley's credit arm, Mac Advantage.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted brought under Federal Rule of Civil Procedure 12(b)(6), must establish, beyond a reasonable doubt, that the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Wright v. MetroHealth Medical Ctr.,* 58 F.3d 1130, 1138 (6th Cir.1995), *quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  The Court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true. *See Central States Pension Fund v. Mahoning Nat'l Bank,* 112 F.3d 252, 255 (6th Cir.1997).  "[A] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such a materials are public records or are otherwise appropriate for taking judicial notice". *New England Health Care Employees Pension Fund v. Ernst & Young,* 336 F.3d 495, 502 (6th Cir.2003).

Defendant Stanley has moved to dismiss the claims of ten plaintiffs who did not have an arbitration clause contained in their distributorship agreements.  These ten plaintiffs are, Vince

3

Bainter, Harlan Grantham, Kenneth Hankins, Robert Jean, Rob Love, Jerry Mead, Stan Schwartz, Fidel Tallet, Rick Williams and Joseph Zollo.

## **Breach of Fiduciary Duty**

Defendant Stanley contends the ten plaintiffs lacking an arbitration clause have failed to plead sufficient facts to establish a fiduciary relationship. Stanley alleges the distributor agreements do not create a fiduciary relationship as all Plaintiffs are independent contractors. Stanley further contends the Complaint does not allege an express fiduciary relationship, rather, it suggests a *de facto* fiduciary relationship. However, as the business relationship between Stanley and these ten plaintiffs is expressly governed and defined by the distributorship agreements, Stanley posits there can be no *de facto* fiduciary relationship.

Plaintiffs' Complaint alleges, "[c]onsequent to the distributorship agreements between Plaintiffs and Mac, Plaintiffs and Class members were required to send all monies collected from their customers to Mac. Mac then acted as the accountant for Plaintiffs and Class members, in applying those funds to the correct accounts of the distributors' concomitant with an accountant-client relationship."

Plaintiffs state Stanley misconstrues Plaintiffs' allegations for their breach of fiduciary trust claim. Plaintiffs allege a fiduciary duty is owed based on a constructive trust. Plaintiffs acknowledge the distributorship agreements do not create an express fiduciary duty, rather, the act of Plaintiffs sending monies and property (i.e. tools, trucks, etc...) to Stanley, as required by subsequent policies adopted by Stanley, gave rise to the fiduciary duty. Plaintiffs allege Stanley became the trustee of constructive trusts with Plaintiffs when it held monies for the beneficial enjoyment of Plaintiffs. Because Stanley's accounting methods and deficient software led to the

4

"wrongful disposition of Plaintiffs monies and property," these actions created, according to Plaintiffs, a breach of fiduciary duties owed Plaintiffs by Stanley.  "That Stanley is the involuntary trustee of a constructive trust in favor of the Plaintiffs is the fiduciary relationship at issue in Count III."  (Plaintiffs Memorandum in Opposition to Defendants Motion to Dismiss, pg. 5.)

### Analysis of Fiduciary Relationship

Both sides agree Ohio law controls this issue as the distributor agreements contain a choice of laws clause which holds Ohio law governs disputes. A claim for breach of fiduciary duty is generally viewed as a claim for negligence involving a heightened standard of care. *McConnell v. Hunt Sports Ent.*, (1999) 132 Ohio App.3d 657.  The term "fiduciary relationship" has been defined in Ohio, "as a relationship in which special confidence and trust is reposed in the integrity and fidelity of another, and there is a resulting position of superiority or influence acquired by virtue of this special trust." *Id.* at 687.  To recover, Plaintiff must show the existence of a duty on the part of the Defendants not to subject him to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom. *Id.*

Plaintiffs contend their Complaint does not allege breach of a fiduciary duty pursuant to the duties imposed under the distributor agreements.  However, Plaintiff's Complaint at paragraph 138 states, "when Mac received Plaintiffs' and Class members' property and monies pursuant to the Agreements, Mac simultaneously was cloaked with the duty to properly value the property, and credit Plaintiffs and Class members.  Its failure to do so constitutes a breach of trust or fiduciary duty."

This claim does seem to indicate the fiduciary duty arises from the duties and obligations

5

assumed pursuant to the distributor agreements. Furthermore, there is no dispute the distributor agreements define Plaintiffs as independent contractors. "Under Ohio law there is generally no fiduciary relationship or duty between an independent contractor and his employer unless both parties understand that the relationship is one of special trust and confidence." *Schulman v. Wolske & Blue Co., L.P.A.* (1998) 125 Ohio App.3d 365, 372. "Moreover, this fiduciary relationship cannot be unilateral." *Id.* As Plaintiffs do not contest that no fiduciary duty was created pursuant to the distributor agreements, the Court finds there is no express fiduciary duty owed Plaintiffs by Stanley.

Plaintiffs do contend a fiduciary duty was created on account of the existence of a constructive trust. However, as Stanley correctly points out, a constructive trust is an equitable remedy for breach of a confidential relationship, and does not create the fiduciary relationship. "Under Ohio law, constructive trust is appropriate remedy against unjust enrichment." *NPF IV, Inc., et al., v. Transitional Health Services, et al.,* 922 F. Supp. 77, 83 (S.D. Ohio 1996). "A constructive trust is a remedial technique utilized by courts of equity to do justice." *Id.* at 84. As the Court in *NPF* explained, "a defendant can hardly be charged with violating a fiduciary or trust relationship which did not exist until a court created a constructive trust as a remedy long after the defendant acquired the property." *Id.* Here, there is no allegation of a Court creating a constructive trust. Absent such an equitable remedy, Plaintiffs have put the cart before the horse in attempting to find a fiduciary relationship based on a constructive trust that has not been created.

Therefore, the Court finds Plaintiffs' claim for breach of fiduciary duty fails to state a claim upon which relief may be granted and Count III of Plaintiffs' Complaint as to the ten

named plaintiffs is dismissed.

## **Conversion**

Plaintiffs' Complaint at Count IV alleges Defendant Stanley failed to properly and accurately account to Plaintiffs and Class members for the property and money Stanley received from them, improperly keeping said property and money for itself.

Defendant Stanley alleges Plaintiffs' claim for conversion fails for the following reasons: 1) Plaintiffs conversion claim is actually a mere "recasting" of their breach of contract claim and, pursuant to *DeNune v. Consol. Capital of N. Am., Inc.,* 288 F. Supp.2d 844, 854 (N.D. Ohio 2003), such recasting fails to state an independent claim for conversion. 2) By failing to identify specific money or property, Plaintiffs have failed to plead the necessary elements of a claim for conversion. 3) Plaintiffs failed to plead a demand for return of their money and property which is necessary to maintain a cause of action for conversion.

Plaintiffs allege the Complaint does identify a duty owed outside the duties created by the distributor agreements. This duty arises from Plaintiffs previously plead claim for breach of fiduciary duty.

Plaintiffs contend they did identify the property converted as "tool trucks, tool inventory, and equipment." Defendant's cases deal only with money, not with property. However, since the monies allegedly converted were to be segregated into the separate accounts of each distributor, Plaintiffs contend they have sufficiently plead a claim for conversion.

Finally, Plaintiffs allege the Complaint itself is sufficient demand for the return of the property and monies allegedly converted. If not, Plaintiffs ask the Court permit them to amend to demonstrate the numerous demands made by Plaintiffs to Defendants for return of monies and

property.

## Analysis of Conversion Claim

Under Ohio law, conversion is "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broadcasting Co.,* (1976) 47 Ohio St.2d 224, 226,. To prevail on a claim for conversion, the movant must demonstrate: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages. *Haul Transport of VA, Inc. v. Morgan,* Slip Op. No. CA 14859, Montgomery Cty., 1995 WL 328995 (Ohio App.1995); *Fayette Inv. Corp. v. Jack Johnson Chevrolet Co.,* 119 Ohio App. 111, (1963). Furthermore, "if one rightfully secured possession of the property of another he could not be held to have converted it, or to wrongfully possess it, until he failed to restore it upon demand, or by some act or circumstance of his own creation he knowingly and unlawfully exercised dominion over it." *Fidelity & Deposit Co. of Maryland v. Farmers & Citizens Bank of Lancaster,* (1943) 72 Ohio App. 432.  In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. *Tabar v. Charlie's Towing Serv., Inc.,* (1994) 97 Ohio App.3d 423, 427-28.

In conversion actions, Ohio Courts have held, "[s]uch tort claim lies against a contracting party independent of a breach of contract claim so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract." *DeNune* at 854 citing *Battista v.*

8

*Lebanon Trotting Ass'n,* 538 F.2d 111, 117 (6th Cir.1976). Plaintiffs cite to their claim that Defendants owed them a fiduciary duty and the breach of fiduciary duty was owed independent of the distributor agreements. As this Court has held Plaintiffs cannot maintain a breach of fiduciary duty claim, their corresponding conversion action may not be maintained as it merely restates damages owed pursuant to contract.

Therefore, this Court need not examine whether demand and refusal occurred, nor whether Plaintiff properly identified the funds and property allegedly converted.

### Unjust Enrichment

Plaintiffs allege Defendant's misrepresentations and omissions have resulted in Stanley being unjustly enriched at the expense of Plaintiffs for payments for tools, trucks and other items. Stanley contends Plaintiffs may not pursue unjust enrichment claims when there exists an express contract. Also, Stanley argues Plaintiffs unjust enrichment claim contains, and is dependent on, an averment of fraud. Therefore, Plaintiffs have failed to plead the averment of fraud with the requisite particularity.

Plaintiffs contend they have met the heightened pleading requirements for averments of fraud. They allege the Complaint clearly describes Defendant's failure to inform Plaintiffs Defendant's business model lacks viability, and alleges the inherent problems with the DFEFs, along with other examples of fraud. Also, Plaintiffs allege their unjust enrichment claim is not dependent on averments for fraud as the Complaint alleges non-payment of commissions. Finally, as Plaintiffs Complaint alleges the distributor agreements were unconscionable, Plaintiffs would be entitled to unjust enrichment damages should the Court find the distributor agreements unenforceable.

9

**Analysis of Unjust Enrichment Claims**

"An action for unjust enrichment will lie where a party retains money or a benefit that in equity or justice belongs to another." *Eyerman v. Mary Kay Cosmetics, Inc.,* 967 F.2d 213, 222 (6th Cir .1992)(citing *Hummel v. Hummel,* 133 Ohio St. 520, (1938)). In a claim for unjust enrichment, Plaintiff must assert the following: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.,*(1984) 12 Ohio St.3d 179,; *Wildner Contracting v. Ohio Turnpike Comm'n,* 913 F.Supp. 1031 (N.D.Ohio 1996). "It is well-established that Ohio law does not permit *recovery* under the theory of unjust enrichment when an express contract covers the same subject." *Teknol, Inc. V. Buechel,* No C-3-98-416, 1999 WL 33117391 unreported (S.D. Ohio Aug. 9, 1999) citing *Ullmann v. May,* (1947) 147 Ohio St. 468, (syllabus ¶ 4). "In the absence of fraud or bad faith, a person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return." *Randolph v. New England Mut. Life Ins. Co.,* 526 F.2d 1383, 1387 (6th Cir.1975).

In *Resource Title Agency, Inc., v. Morreale Real Estate Services, Inc.,* 314 F. Supp.2d 763, 772 (N.D. Ohio 2004), the Court held, "unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute," citing *Lightbody v. Rust,* No. 80927, 2003 WL 21710601, at *8 unreported (Ohio. App. July 24, 2003), "and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." citing *Wolfer Enterprises v. Overbrook Development Corp.,* (1999) 132 Ohio App.3d 353, 357.

The Court finds that Plaintiffs have met the pleading requirements for unjust enrichment whether it be through averments of fraud or otherwise. The Complaint states with sufficient specificity the allegedly fraudulent acts of Defendants and the actions by which Defendants have been unjustly enriched, from Defendants reliance on the allegedly false information contained in the DFEFs to the nonpayment of commissions, etc. Also, Ohio law clearly supports pleading in the alternative, permitting Plaintiffs to plead both breach of contract and unjust enrichment claims, though they may not prevail on both. Therefore, the Court denies Defendant's Motion to Dismiss Plaintiffs Unjust Enrichment claim.

## Breach of Contract

It is necessary to point out the confusing nature of Plaintiffs' breach of contract claim. In paragraphs 156 and 157 Plaintiffs allege the distributor agreements are adhesion contracts and should not be enforced. In paragraphs 157 through 171 Plaintiffs contend the agreements and/or certain clauses within the agreements are unconscionable. In paragraph 172, Plaintiffs appear to argue a violation of the implied covenant of good faith and fair dealing. In paragraph 173, Plaintiffs contend Defendant's breach was tortious and in bad faith. Finally, paragraphs 174 & 175 state, "thousands of Plaintiffs and Class members entered into agreements with Mac, the express terms of which were breached by Mac. Those are binding contracts or agreements. Plaintiffs and Class members performed their contractual obligations while Mac failed to fulfill its contractual obligations without legal excuse." All of these paragraphs follow the heading, **Sixth Claim for Relief Breach of Contract Against Defendant Stanley.** This inartful pleading is problematic, as it presents difficulties for defendants and the Court to determine what claims are alleged.

The only specific breach stated in Count VI of Plaintiffs' Complaint is "with regard to Plaintiffs and Class member who were MDSR's, Mac agreed to pay commissions as promised. Mac failed to do so , even under the constantly changing commission program such failure amounts to an express breach of contract." Complaint para. 155. There is also a blanket breach of contract claim alleging Stanley "failed to fulfill its contractual obligations without legal excuse." *Id* at para. 175. The Complaint does not specify which named class participants are or were MDSRs.

Stanley contends such failure to cite to the specific portion of the agreements breached warrants dismissal for failure to state a claim. Plaintiffs argue the Counts contained in their Complaint reallege allegations contained within the general body of the Complaint, therefore, many of the specific allegations are contained within the narrative of the Complaint, though they may not be stated under the captioned Count. They then argue that paragraph 76 of the Complaint states, "[i]n the case of traditional distributors who signed agreements preventing Mac from making sales to customers on their routes, this conduct violated the express terms of their agreements." Plaintiffs cite to language found in the distributor agreement of Vincent Bainter, as an example of Defendants breach of contract, which states,

"[n]otwithstanding the first paragraph of this Agreement Mac reserves the right to sell Products to Industrial users, Governmental Installations, Original Equipment Manufacturers, Exporter, Foreign Accounts and other customers or potential customers in similar categories within or without the Territory which in Mac's sole judgment require technical data or special assistance as a prerequisite to servicing and selling the account."

However, as Stanley points out, the first paragraph of Plaintiffs' distributor agreements clearly states the licenses are non-exclusive. Therefore, this example of breach cited by Plaintiffs is not a breach of the express terms of the distributor agreement. Again, with respect

12

to Plaintiffs' allegation that MDSR's were entitled to commissions per contract they do not identify which Plaintiffs were MDSR's, nor does the Complaint identify which provision in a particular agreement[1] is implicated.  However, given the liberal pleading requirements of Ohio law, Plaintiffs allegations that Defendants failed to pay commissions pursuant to contract states a claim upon which relief may be granted.  Therefore, the Court denies Defendant's Motion to Dismiss Count VI of Plaintiffs' Complaint.

Because Defendant has not moved on Plaintiff's claim to find the distributor agreements unconscionable in part, or in full, the Court will not address this issue.

### Breach of Covenant of Good Faith and Fair Dealing

The Court grants dismissal of this claim, as it is contained within the body of Plaintiffs breach of contract claim and does not specify what conduct breached the covenants.  Therefore, the allegations are insufficient to support the claim.

### Legal or Constructive Fraud and Individual Claim for Fraud

Plaintiffs Complaint alleges Stanley had a duty to disclose material information and failed to do so.  Defendant also allegedly made false statements with the intent to mislead Plaintiffs and induce them into entering into agreements with Defendant.

Defendant alleges Plaintiffs have failed to meet the heightened pleading requirements for fraud in failing to identify the who, what, where and how of a fraud claim.

### Analysis of Fraud Claims

In Ohio, to prevail on a common law claim for fraud a plaintiff must prove: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material

---

[1] There are several different versions of distributor agreements at issue.

to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49.

The Court finds Plaintiffs have met the heightened pleading requirements of Fed. R. Civ. P. 9(b) which states, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Plaintiffs have clearly articulated fraud in the Complaint with respect to: Stanley's alleged falsification of data in its DFEF's, creating the false appearance of commercial viability to induce parties to become distributors using false data, (Complaint para 28.); failure to disclose the Doomsday Scenario to potential investors (*Id* at 33-35); and, the fraudulent transfers of assets and debts as described in paragraphs 55-60.  Each state with sufficient particularity the fraud at issue.  Therefore, Plaintiffs' claims for legal and constructive fraud and individual claims for fraud and fraud in the inducement remain and Defendant's Motion to Dismiss Plaintiffs' fraud claims is denied.

### **Tortious Interference with a Business Relationship**

Plaintiffs' Complaint alleges Defendant tortiously interfered with Plaintiffs business relations with customers when Defendant sent credit-dunning letters to customers for non-payment when many customers had paid in full.  Plaintiffs allege Defendants inadequate accounting methods resulted in several customers receiving bills that had already been paid in full, resulting in bad feelings and even some concern among Plaintiffs' customers that Plaintiffs

were pocketing the payments.

Stanley alleges it was entitled to send the letters as a proper creditor of many of Plaintiffs' customers.

### Analysis of Tortious Interference

"Ohio law recognizes both tortious interference with a business relationship and tortious interference with contract rights claims." *Re/max International, Inc. v. Smythe Cramer Co.,* 265 F.Supp.2d 882, 890 (N.D. Ohio 2003)*, A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council,* (1995) 73 Ohio St.3d 1.  "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Id.*

Plaintiffs' Complaint has plead sufficiently the nature of the business relationship interfered with, the nature of the interference and that Plaintiffs' customers have "discontinued, refuse to enter, or otherwise strain their business relationship."  Therefore, the Court finds Plaintiffs have met the pleading requirements.  Whether Defendant was privileged to send the letters to customers of Plaintiffs is a factual issue to be determined at a later date.

### Claim for Injunctive Relief

Because an injunction is a legal remedy and not a cognizable claim, the Court dismisses Count IX of Plaintiffs' First Amended Complaint in so far as it attempts to state a claim.

### Defamation

Plaintiffs' Complaint alleges defamation and false imprisonment against Defendant. Because the defamation and false imprisonment claims fail to allege the offending statements

15

and fail to identify the individuals detained, by whom they were detained and when and where they were detained, such pleading fails to provide Defendant adequate notice to assert defenses. Furthermore, since Plaintiffs have not responded to the Motion to Dismiss on these claims, the Court grants Defendant's Motion to Dismiss.

### **Fraudulent Concealment**

Because Defendant has not moved the Court to Dismiss this Count, the Court will not address it.

### **CONCLUSION**

Therefore, the Court grants Defendant' Motion to Dismiss Counts III (breach of fiduciary duty), IV (conversion), IX (Injunctive relief) and Individual Counts of Defamation and False Imprisonment.  The Court denies Defendant's Motion on the remaining counts.

IT IS SO ORDERED.


 _July 5, 2005_                                  _s/Christopher A. Boyko_____
 Date                                          CHRISTOPHER A. BOYKO
                                              United States District Judge