UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Jean, et al., | : | Case No. 1:04CV1904 |
| | : | |
| Plaintiffs | : | Judge Christopher Boyko |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| The Stanley Works, et al., | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendants | : | |

This action is before Your Honor upon the defendant's Motion To Compel Arbitration (Doc. #32). That motion was challenged by plaintiffs on the basis that the arbitration clause in the Distributor Agreement entered into between Mac Tools and the plaintiffs is unconscionable and should not be enforced.

In an Opinion and Order entered August 28, 2006 (Doc. #99) Your Honor addressed a number of the issues raised by the parties, and portions thereof bear repeating for purposes of this decision. Therein it was stated:

> It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). In addition, the Supreme Court has held that the Federal Arbitration Act preempts state laws and policies regarding arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984). The Federal Arbitration Act ("FAA") provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. "The Supreme Court has interpreted this phrase to mean that only claims for fraudulent inducement of the arbitration clause itself may be heard by a court." *Prima Paint Corp. v. Flood &*

*Conklin Mfg.*, 388 U.S. 395, 403-404 (1967). Claims that a party was fraudulently induced into entering a contract, absent a claim that the particular arbitration clause was fraudulently induced, are appropriately addressed in arbitration. See *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1278 (6th Cir. 1990). "[S]tate law governs 'generally applicable contract defenses to an arbitration clause, such as fraud, duress, or unconscionability.'" *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

\* \* \*

First and foremost, the parties do not contest the Federal Arbitration Act governs. Plaintiffs attack the enforceability of the arbitration agreements on the grounds they are unconscionable/unenforceable. The Court recognizes and will analyze this Motion as brought under the Federal Arbitration Act and not as a Motion to Dismiss.

\* \* \*

An arbitration clause is presumptively valid and it is plaintiffs' burden to demonstrate the arbitration clause is invalid or unenforceable. See *Pritchard v. Dent Wizard International Corp.*, 275 F.Supp.2d 903, 918 (S.D. Ohio 2003), 9 U.S.C.

\* \* \*

In Ohio, "the unconscionability doctrine embodies, therefore, two separate components: '(1) substantive unconscionability, *i.e.*, unfair and unreasonable contract terms, and (2) procedural unconscionability, *i.e.*, individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible.'" *Richard v. Teynor's Homes, Inc.*, 279 F.Supp.2d 910, 915 (N.D. Ohio 2003), *quoting Jeffrey Mining Prods. L.P. v. Left Fork Mining Co.*, 143 Ohio App.3d 708, 758 N.E.2d 1173 (2001). "Both elements must be present to find a contract unconscionable." *Id.*

\* \* \*

**Procedural Unconscionability**

> On May 3, 2005, this Court granted Plaintiffs' Motion for Leave to File Evidence of Unconscionability of Arbitration Agreement. Plaintiffs then filed twenty-seven affidavits attesting to the procedural unconscionability of the arbitration clauses. The Court notes the majority of named plaintiffs with arbitration clauses failed to offer evidence of unconscionability.
>
> \* \* \*
>
> As a threshold matter, those named plaintiffs who have failed to submit evidence of procedural unconscionability (i.e. those who failed to submit affidavits), have failed to met their burden of showing unconscionability of the arbitration clause and this Court Orders their claims to arbitration for resolution of their disputes. However, the Court will stay the Order of Arbitration pending a determination of the enforceability of those arbitration clauses that require only a legal determination and are not dependent on a factual determination. (i.e. limitation of remedies clauses, limitation of time to bring a claim, severability.)

That ruling concluded with reference to this Court, as follows:

> For those Plaintiffs who have submitted affidavit evidence of unconscionability, the Court Orders an evidentiary hearing to be conducted by the Magistrate Judge for Report and Recommendation on whether the arbitration clauses at issue are unconscionable and the terms unenforceable. The evidentiary hearing shall be limited in scope to the subject of the affiants affidavit testimony. The Magistrate Judge shall also hear oral arguments on the substantive unconscionability/enforceability of those arbitration clauses that involve questions of law and not of fact (i.e. limitation of remedies clause, limitation of time to bring a claim, severability). The arguments shall be limited to those raised in the parties briefs.[1]

Evidentiary hearing was held pursuant to the order of reference, at which eight of the plaintiffs (and one spouse) and three employees of the defendant testified. The plaintiffs who appeared were: Don Goddard, Kent Hadley, Victor Wenzel, Kelly Thompson, Tim Blackwell, Chris Shelton, Henry (Danny) Deemer and Dale Glime.

---

[1]Counsel waived oral argument in favor of submitting post-hearing briefs.

3

As to the nineteen plaintiffs who submitted affidavits but did not appear, it could not be found that enforcement of the arbitration clause would be procedurally unconscionable, so that it follows that as to them the defendant's motion to compel should be granted unless there is a basis of denial of the motion applicable to all plaintiffs.

At this juncture it bears repeating that this matter is not before the court in the context of a motion to dismiss, in which case the court would be obliged to accept as true the well pled averments of the amended complaint. It is before the court upon the motion to compel arbitration and the opposition thereto, which imposes upon the plaintiffs the burden of establishing by a preponderance of the evidence that enforcement of the arbitration clause would be unconscionable. This distinction in the procedural posture of the action is of critical importance, as this Court finds that there has been a complete failure of proof as regards certain of the arguments advanced in plaintiffs' memorandum in opposition to defendant's motion, which proceeded on the premise that because the court would consider the defendant's motion as one to dismiss the complaint the averments thereof would be credited. A prime example of this is the arguments concerning the alleged relationship between Stanley and JAMS/Endispute (JAMS).

The arbitration clause in the Distributor Agreements executed by the eight testifying plaintiffs[2] provides, in pertinent part:

> **19. Governing Law:  Three Step Resolution Process.**
>
> > **19.1 Governing Law.** This Agreement takes effect upon its acceptance and execution by us in Ohio and shall be interpreted and construed under the laws of the State of Ohio.  Ohio laws shall prevail in the event of any conflict of law (without regard to, and without giving effect to, the application of Ohio choice

---

[2] Although the Distributor Agreements may not be identical as to each of the eight, the arbitration clause and other provisions alluded to herein have remained essentially the same.

4

of law rules)  except: (a) to the extent governed by the U. S. Trademark Act of 1946, 15 U.S.C. Sec. 1051, et seq. (the so-called "Lanham Act"); (b) with regard to such Sections where, and to the extent that, we have specifically provided otherwise; and (c) with respect to all issues relating to arbitrability or the enforcement of the agreement to arbitrate contained in this Article which shall be governed by the U. S. Arbitration Act, 9 U.S.C. Sec. 1, et seq., and the federal common law of arbitration as interpreted by the federal district court for the Southern District of Ohio.

**19.2 Resolution of Disputes.**  Except with respect to the enforcement of our rights and remedies under (i) any promissory note executed by you in our favor and/or under any security agreement between us, or (ii) any promissory note executed by you in favor of a third party and/or under any security agreement between you and a third party, either of which promissory note and/or security agreement is assigned to us by such third party, as to which the procedures specified in this Section 19.2 shall not apply, the procedures  specified in this Section 19.2 are the only procedures for the resolution of any and all controversies, disputes or claims of any nature whatsoever arising out of or related to this Agreement or any other agreement between you and us, including the breach, termination or validity of any such agreement, or the relationship between you and us and/or the operation of the Business....

*   *   *

> (d) Arbitration.  If the matter has not been resolved pursuant to mediation within 60 business days of the initiation of such procedure, or if either party will not participate in a mediation, the controversy shall be settled by arbitration by a sole arbitrator in accordance with the J.A.M.S./Endispute Arbitration Rules and Procedures.  Any mediator or arbitrator shall be mutually selected by you and us or, if you and we cannot agree, by J.A.M.S./Endispute, Inc. in accordance with the J.A.M.S./Endispute Arbitration Rules and Procedures.  The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §1-16.  Courts of the State of Ohio or any U.S. District Court located therein will have sole

5

jurisdiction over enforcement of arbitration and/or enforcement of the Agreement. Judgment upon the award rendered by the arbitrator may be entered by any state of federal court in Ohio having jurisdiction thereof. Unless the parties agree otherwise in writing, the place of arbitration shall be in Columbus, Ohio. The arbitrator is not empowered to and shall not, award punitive, exemplary, indirect, special, consequential or incidental damages or any other damages in excess of actual direct damages or in excess of any limit on direct damages set forth in this Agreement, whichever is lower. If either party is required to compel arbitration, that party shall be reimbursed for the costs and expenses incurred in connection therewith.

* * *

(f) **Claims Must Be Brought in One Year**. Except with respect to the enforcement of our rights and remedies under (i) any promissory note executed by you in our favor and/or under any security agreement between us, or (ii) any promissory note executed by you in favor of a third party and/or under any security agreement between you and a third party, as to which the limitation provided by this Section 19.2(f) shall not apply, any and all claims, controversies and other disputes arising out of or relating to this Agreement, the relationship between you and us or your operation of the Business, brought by an party hereto against the other, shall be commenced within one (1) year from the occurrence of the facts giving rise to such claim or dispute, or such claim or dispute shall be barred.

**19.3 Waiver of Trial by Jury.  YOU AND WE EACH WAIVE THE RIGHT TO HAVE A CLAIM OR DISPUTE UNDER THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN YOU AND US DECIDED BY A JURY.**

The limitation on damages contained in the dispute resolution portion of the Distributor Agreement is carried forward in succeeding sections:

**20. Waiver of Damages.**

**20.1 Waiver.** You and we hereby waive to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential or incidental damages against the other.

**20.2 Limitation to Actual Damages.** You and we agree that, in the event of a dispute or claim with or against the other, each party shall be limited to the recovery of any actual direct damages sustained by it, subject to any limit on direct damages set forth in this Agreement.

**20.3 No Attempt to Collect.** Neither you nor we will accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential or incidental damages from the other even if such damages are entered, ordered or awarded by the arbitrator despite the agreement between you and us to the contrary.

**21. Limitation of Liability**.

**NEITHER WE NOR YOU SHALL BE LIABLE TO THE OTHER FOR ANY PUNITIVE, EXEMPLARY, INCIDENTAL, CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES ARISING OUT OF OR RELATED IN ANY WAY TO THE SALE OF THE PRODUCTS OR THE STANLEY PRODUCTS OR THE PERFORMANCE OF ANY OBLIGATION UNDER THIS AGREEMENT OR UNDER ANY OTHER AGREEMENT BETWEEN YOU AND US, WHETHER RESULTING FROM TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY, BREACH OF CONTRACT OR WARRANTY OR OTHERWISE, AND ANY LIABILITY WE MAY HAVE TO YOU ARISING IN ANY MANNER AS A RESULT OF SALES OF THE PRODUCTS OR THE STANLEY PRODUCTS TO YOU SHALL NOT EXCEED THE PRICE PAID BY YOU FOR THE PRODUCT OR THE STANLEY PRODUCT GIVING RISE TO SUCH LIABILITY.**

The parties are in agreement the Ohio substantive law applies in this action, and there is no dispute as to the fact that under Ohio law the plaintiffs must prove both the substantive and

procedural unconscionability in order to defeat the defendant's motion to compel arbitration.

There is, however, another rule that the parties have overlooked in their briefing in this case, that being that once it has been determined that a dispute is subject to arbitration, which is to say that the doctrine of unconscionability does not apply to preclude arbitration, all issues as to construction and application of the terms of the contract between the parties are for the arbitrator, not the court. See, Ferro v. Garrison Industrial, Inc., 142 F.3d 926 (6th Cir. 1998); Parsley v. Terminix International Co., 1998 U.S. Dist. Lexis 22891 (S.D. Ohio 1998), slip opinion at p. 32. This being so, the sole issue before this Court is whether the arbitration clause contained in the Distributor Agreement is subject to enforcement, the converse of which being whether it may not be enforced because to do so would violate the doctrine of unconscionability.

Plaintiffs reliance on the decisions in Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003), Schwartz v. Alltel, unreported, 2006 WL 2243649 (Ohio App. 8 Dist. 2006), and Eagle v. Fred Martin Motor Company, 157 Ohio App.3d 150, 809 N.E.2d 1161 (2004), is plainly misplaced.

In Stutler v. T.K. Constructors, Inc., 448 F.3d 343 (6th Cir. 2006) the Sixth Circuit stated "We clearly limited our holdings in Morrison and Cooper to the validity of arbitration clauses in employment agreements where an employee's statutorily created civil rights are at issue," id at 345, noting that Morrison arose in the context of a Title VII action.

The two state court rulings relied upon by the plaintiffs are similarly limited, in that in both the issue was the enforceability of an arbitration clause where the claim made by the plaintiff was predicated upon the Ohio Consumer Sales Practice Act (CSPA). In Eagle the court stated that "in consumer transactions, and especially those involving necessities such as automobiles, the trial and

8

appellate courts should pay closer attention to the terms of the arbitration clause...This close scrutiny is necessary for the preservation of the protection afforded consumers through legislation such as the CSPA," 157 Ohio App.3d at 169, adding that "When an arbitration clause vanquishes the remedial purpose of a statute by imposing arbitration costs and preventing actions being brought by consumers the arbitration clause should be unenforceable," id at 176.  This distinction between enforcing an arbitration clause in actions under an Ohio remedial statute and actions involving non-consumer claims was noted in English v. Cornwell Quality Tools Company, unreported, 2005 WL3556281 (Ohio App. 9 Dist. 2005), slip opinion at pp. 27-28, a decision which will be given further consideration herein.

In the memorandum in opposition to the motion to compel plaintiffs argued that substantive unconscionability exists in that "Stanley did not disclose its relationship with JAMS, or the cost-splitting procedures [and/or] the discovery limitations under JAMS' rules." It was also asserted that "The arbitration clause also severely limits Plaintiffs' remedies under Ohio statutory law.  Most important among those limitations is the requirement for commencing actions within one year, where Ohio law has a 15-year statute of limitations for breach of a written contract."  Plaintiffs also challenged the provision which precludes the arbitrator from awarding punitive, exemplary, indirect, special, consequential or incidental damages.  Those arguments were carried forward into plaintiffs' post-hearing brief.

This Court finds that the arguments with regard to the one-year limitations period is not supported by the authorities cited by plaintiffs.  The Ninth Circuit cases cited in plaintiff's memorandum are civil rights actions, with the courts finding that such a limitation period contravened the continuing violation doctrine, a consideration not present herein.  Judge Carr's ruling

9

in Garrett v. Hooters-Toledo, 295 F.Supp2d 774 (N.D. Ohio 2003), entailed a ten day period within which to make a demand for mediation. This Court does not consider Judge Carr's conclusion that such a "draconian term" is substantively unconscionable as having no reasonable justification, as demonstrating that a one-year limitation is likewise unconscionable, and plaintiffs have cited no Ohio authorities which would call for that conclusion.[3] On the other hand, Judge Aldrich of this Court has held that in the context of a commercial dispute a sixty-day period within which arbitration must be demanded was not unconscionable. Reflective Vision, Inc. v. Pearle Vision Center, Inc., unreported, 1989 U.S. Dist. Lexis 1016 (N.D. Ohio 1989).

With regard to the limitation on damages, not only is it bilateral, it appears in two other provisions of the Distributor Agreement, which would open the door for the arbitrator to address the question of whether such a waiver is allowed under Ohio law. Plaintiffs have not presented to this Court any persuasive Ohio authority that inclusion of such a mutual limitation upon damages in an arbitration agreement renders it unconscionable, and in Parsley v. Terminix International Co., supra, it was held that the issue of enforceability of a limitation of damages provision is an issue for the arbitrator, not the court, slip opinion at p. 32.

Turning to the questions of the relationship between JAMS and Stanley/MAC and that organization's Rules and Procedures, plaintiffs presented no evidence in support of the allegations of the complaint that a relationship exists which would impact upon the impartiality of an arbitrator selected pursuant to that organization's Arbitration Rules and Procedures.

While it is true that Rule 17 of the JAMS Rules and Procedures only provides for one

---

[3]Although this Court does not believe that the one-year limitation arises to the level of substantive unconscionability, this Court does believe that it would be within the arbitrator's province to find that, as a matter of state law, it is not enforceable.

deposition by each party, it further provides that "The necessity of additional depositions shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness."  Absent some showing by plaintiffs that this discretion is routinely not applied, this Court cannot conclude that having the arbitration controlled by the JAMS Rules and Procedures renders the arbitration clause of the Distributor Agreement substantively unconscionable.

Lastly on this subject, while it is true that as an abstract proposition the costs of arbitration and the manner in which such costs are allocated can render an arbitration agreement unconscionable, under Ohio law there must be evidence, not mere speculation, bearing on that proposition.  Garrett v. Hooters-Toledo, supra, at 781; Richard v. Teynors' Homes, Inc., 279 F.Supp.2d 910, 917-918 (N.D. Ohio 2003); Handler v. Southerland Custom Builders, Inc., unreported, 2006 WL2441673 (Ohio App. 8 Dist. 2006), slip opinion at p. 3; English v. Cornwell Quality Tools, Co., Inc., supra, slip opinion at p. 4; Garcia v. Wayne Homes, unreported, 2002 WL 628619 (Ohio App. 2 Dist. 2002), slip opinion at p. 12.  Plaintiffs failed to present any evidence on this critical issue.

Based upon all the foregoing, this Court finds that plaintiffs have failed to establish substantive unconscionability as to the arbitration clause contained in the Distributors Agreements they executed.

While this conclusion could obviate the necessity to consider the procedural unconscionability aspect of the two-pronged standard which the plaintiffs are required to satisfy, in the interest of completeness this Court will address it as well.

The question of whether the eight plaintiffs who testified received a copy of the Distributor

Agreement before they arrived in Columbus for training is, in this Court's opinion, of no consequence. The critical, and undisputed, fact is that at the conclusion of training each of them had the opportunity to read the Distributor Agreement before they signed it, but did not do so.

The plaintiffs' descriptions of the signing process varied, some describing a "cattle call" while others agreed with the testimony of the defendant's witnesses that the process was one to one. As to the time it took, the estimates ranged from a low of ten minutes (Blackwell) to a high of a half hour to forty-five minutes (Goddard), with most putting the time fifteen to twenty minutes. They all described the process as being presented with a stack of documents and being told "sign here, sign here...," and signing about twenty times. This Court is constrained to observe that fifteen to twenty minutes seems to be a very long time to simply sign one's name twenty times.

While all eight testified that they did not read what they were signing, none testified that they were told they could not do so. None testified as to asking for additional time in order to read the documents, nor did any ask if they could take them home to review and/or ask another for assistance and return them afterwards. Some stated that they rushed through the process because they felt under time constraints to get to the airport to catch their flight home. Others essentially said that they were so enthused at becoming a MAC/Stanley distributor that they were willing to sign whatever was put in front of them. Mr. Shelton put it as "We wasn't thinking about contracts. We were thinking about selling tools, you know."

In this Court's opinion, the fact that these plaintiffs had the opportunity to read the Distributor Agreement, including the arbitration clause, dooms their claim of procedural unconscionability under Ohio law. The Ohio courts have repeatedly held that a person who signs a contract providing for arbitration without reading it is bound by its terms. See Richard v. Taynor's Home, Inc., supra, at

12

pp. 913-194; W.K. v. Farrell, supra at pp. 19-20 (although the plaintiff maintained that she was "presented with a fat stack of papers to sign and was rushed onto the sales floor" on her first day of employment, the court held that she was bound by the arbitration agreement she had not read); Melia v. Office Max North America, Inc., 2006 Ohio App. Lexis 4689 (8th Dist. 2006); English v. Cornwell Quality Tools Company, supra, slip opinion at p. 6; Butcher v. Bally Total Fitness Corp., unreported, 2003 WL 1785027 (Ohio App. 8 Dist. 2003), slip opinion at p. 7 ("Whether she read the paperwork or disregarded the paperwork, she signed the papers stating she agreed to the terms of the EDRP in order to be hired.  The appellant cannot now claim that failing to read the terms of a contract when given the express opportunity to do so amounts to an unconscionable contract."); Garcia v. Wayne Homes, supra, slip opinion at p. 8.

This Court considers the ruling in English v. Cornwell Quality Tools, supra, to be particularly significant in that it was an action by a number of former franchises of Cornwell in which they were dealers of the company's automotive tools and equipment, operations markedly similar to those herein who sued Cornwell when their franchises failed, asserting claims for relief comparable to those advanced in this action.  The company moved to stay the action in favor of an arbitration clause contained in a contract which it drafted, the uniform terms of which were not negotiated with any of the franchisees, again comparable to the facts herein.  In resisting arbitration the plaintiffs maintained that the arbitration clause was unconscionable, one of the arguments advanced being:

> Appellants claim Cornwell discouraged them from even reading the contract before signing it and that the bargaining power between the two sides was disparate enough to create procedural **unconsciouability**.  Appellants assert the lack of education on their part and inexperience in entering into franchise agreements created **unconsciouability** when compared with the education and experience of the Cornwell's managers.  Additionally, Appellants contend Cornwell never explained the terms of the **arbitration** clause, fees or

13

> the Franchise Agreement to them, nor did anyone from Cornwell
> suggest to them that they should be represented by counsel.

slip opinion at p. 5. The decision further reflects that, as is true in this case, some of the plaintiffs maintained that they had not read the contract before signing while others maintained that they did not understand what they had read. The court found those arguments unavailing, quoting the following from the Ohio Supreme Court decision in ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498 (1998):

> "A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed. *McAdams v. McAdams*, (1909), 80 Ohio St. 232, 240-241, 88 NE 542, 544. See, also, *Upton v. Tribilcock*, (1875), 91 U.S. 45, 50, 23 L.Ed. 203, 205 ('It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written.'). The legal and common-sensical axiom that one must read what one signs survives this case." Id. at 503.

slip opinion at p. 5. In distinguishing the circumstances of that case from those involving a consumer transaction for a necessity, the court observed that in becoming Cornwell franchises the plaintiffs "were aware of the financial commitment involved with the terms of thousands of dollars involved in buying the tools, or having Cornwell finance the cost of the tools, and leasing a vehicle. Anyone entering into a commercial contract has the burden of assuring themselves of what they are taking part in," slip opinion at p. 7. This Court believes that the same could be said in this case.

It has also been argued that these plaintiffs and MAC/Stanley did not stand on an equal footing in entering into the Distributor Agreements. Under Ohio law, that simple fact of inequality does not equate to procedural unconscionability. See, Handler v. Southerland Custom Builders, Inc., supra, slip opinion at p. 4; Melia v. Office Max North America, Inc., supra, slip opinion at p. 27;

14

Parsley v. Terminix International Co., supra, slip opinion at p. 10.

Although neither counsel saw fit to ask any of the plaintiffs their age, it appeared to this Court that none was particularly young, and most had a fair degree of life experience. Of the eight, it is only clear that Mr. Shelton quit his job in anticipation of becoming a MAC/Stanley distributor, but even if that was true of all of them they would have done so without knowing what contractual obligations they would be required to assume if they qualified at training to become a distributor, if their testimony that they did not see the Distributor Agreement until the end of training was to be credited. This Court does not find procedural unconscionability by virtue of inequality of position as to any of the eight.

It is, therefore, this Court's recommendation that defendant's motion to compel arbitration be granted.

s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:    April 2, 2007


**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).